# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| **REGINA DAVIS, on behalf of herself and all others similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) ) | |
| v. | ) ) | 1:08CV247 |
| **BEAZER HOMES, U.S.A. INC., BEAZER HOMES CORP. and BEAZER MORTGAGE CORPORATION,** | ) ) ) ) ) | |
| **Defendants.** | ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Now pending before the Court is a motion to dismiss this putative class action, pursuant to Fed. R. Civ. P. 12(b)(6), which was jointly filed by Defendants Beazer Homes, U.S.A. Inc. ("Beazer USA"), Beazer Homes Corp. ("Beazer Corp.") and Beazer Mortgage Corporation ("Beazer Mortgage") (collectively the "Defendants"). (Docket No. 24.) Plaintiff Regina Davis ("Plaintiff") has opposed the motion (Docket No. 30), and Defendants have filed a reply (Docket No. 31).

### I. FACTUAL AND PROCEDURAL BACKGROUND

Defendants are in the business of designing, building and selling homes. (Docket No. 19, Amended Complaint ("Am. Compl.") ¶ 2.) To facilitate homes sales, Defendants offer purchasers several incentive programs; these programs are the focus of the present action.

(*Id*. ¶¶ 4, 13.) In particular, Plaintiff challenges Defendants' Dollar Down Program ("DDP"), which Plaintiff maintains is marketed specifically to low-income individuals as a way to purchase the "home of their dreams . . . for less money than they ever expected," as well as offers to "gift" money to buyers for a down payment on their home and/or to pay for some or all of the buyers' closing costs, provided that certain conditions are met. (*Id*. ¶¶ 3, 13.)

On or about August 16, 2002, Plaintiff purchased a home from Defendants in Concord, North Carolina, and financed said purchase through Beazer Mortgage. (*Id*. ¶¶ 51-52.) Plaintiff participated in the above-mentioned incentive programs. (Docket No. 30, Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Br.") at 6-7.) Plaintiff maintains that Defendants misrepresented said programs and that the incentives she received were not true gifts because the Defendants incorporated their cost into the price of her home so that she ultimately financed her own incentives. (Am. Compl. ¶ 20.) Consequently, Plaintiff maintains that she did not have adequate equity in her home and that her mortgage payments were unfairly inflated, which resulted in the loss of her home to foreclosure. (*Id*. ¶ 13.)

On April 8, 2008, Plaintiff initiated this action by filing a complaint with this Court. (Docket No. 1, Complaint.) On June 4, 2008, Defendants filed a motion to dismiss said complaint. (Docket No. 12.) Instead of responding to that motion, Plaintiff filed her amended complaint on July 25, 2008, which alleges violations of the Real Estate Settlement Procedures Act of 1974 ("RESPA"), as well as the North Carolina Unfair and Deceptive

-2-

Case 1:08-cv-00247-WO-PTS   Document 39   Filed 11/17/09   Page 2 of 16

Trade Practices Act ("UDTPA"). (Docket No. 19.) This prompted Defendants to file their second motion to dismiss, which is presently before the Court.[1,2] (Docket No. 24.)

## II. DISCUSSION

Defendants seek dismissal of Plaintiff's complaint in its entirety on the grounds that Plaintiff's claims are time-barred and/or otherwise fail to state a claim upon which relief can be granted. Plaintiff opposes the motion on the merits. Both parties have filed briefs and other documents in support of their respective positions.

### A.     Legal Standard for a Motion to Dismiss

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *See, e.g., Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). To survive such a motion, "the facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Courts must "construe factual allegations in the non-moving party's

---

[1] Defendants' initial motion to dismiss (Docket No. 12) is moot.

[2] The Court observes that Plaintiff's original complaint contained several exhibits, which were not appended to her amended complaint. Nonetheless, the Court may take cognizance of these documents because they were mentioned in the amended complaint. *See, e.g., Tellabs, Inc., v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 310, 322 (2007) ("[C]ourts must consider the complaint in its entirety," including "documents incorporated . . . by reference."). Moreover, even if Plaintiff had excised all references to said documents from her amended complaint in addition to omitting the documents themselves, the Court would still be within its rights to take account of said exhibits, so long as they were "integral" to the amended allegations. *See, e.g., Jeffrey M. Brown Assocs., Inc. v. Rockville Ctr., Inc.*, 7 Fed. Appx. 197, 202 (4th Cir. 2001).

favor and will treat them as true, but the court is not bound by the complaint's legal conclusions." *Id*. (citations omitted).

**B.      Statute of Limitations Issues**

It is undisputed that Plaintiff closed the purchase of her home from Defendants on or about April 16, 2002. Further, it is clear that Plaintiff did not initiate any legal action against Defendants until April 8, 2008, almost six years later. Based on this fact, Defendants invoke the respective statutes of limitations found in RESPA and the UDTPA to argue that Plaintiff's claims are time-barred. Notwithstanding Defendants' contention, Plaintiff maintains that her claims are timely and/or that any delay should be excused, and that in any event, her claims should not be dismissed solely on statute of limitations grounds. The Court will first address the timeliness of Plaintiff's filing, beginning with her RESPA claims.[3]

**1.      Plaintiff's RESPA Claims (Counts II and III)**

In her amended complaint, Plaintiff alleges that Defendants violated subsections (a) and (b) of RESPA's Section 8, codified at 12 U.S.C. § 2607, which is commonly known as the statute's anti-kickback/fee-splitting clause. (Am. Compl. ¶¶ 127-34.) Accordingly, her claims are governed by RESPA's one-year statute of limitations period, as set out in 12

---

[3] The Court observes that it is only "[i]n limited circumstances where the allegations of the complaint give rise to an affirmative defense" that such a "defense may be raised under Rule 12(b)(6)." *See, e.g., Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993). However, "[w]here facts sufficient to rule on an affirmative defense" - including " the defense that the plaintiff's claim is time-barred" - "are alleged in the complaint, the defense may be reached by a motion to dismiss." *Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009) (citing *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc)).

U.S.C. § 2614, which begins to run on "the date of the occurrence of the violation," rather than "when the action accrues," as is the case for many statutorily-created causes of action. *Cf. Mullinax v. Radian Guar. Inc.*, 199 F. Supp. 2d 311, 324 (M.D.N.C. 2002). Thus, the so-called "discovery rule," discussed *infra*, has no applicability to these claims. *Id*.

Acknowledging this fact, Plaintiff does not argue that Counts II and III of her amended complaint were timely filed under the strictures of § 2614; instead, she argues that said requirements are not jurisdictional in nature and therefore may be waived by the Court upon a showing of good cause. (Pl.'s Br. at 22.) Plaintiff argues that the one-year limitations period which governs her claims should be equitably tolled due to the alleged fraudulent concealment of certain critical facts by the Defendants. (*Id*. at 22-26.) Thus, the question before the Court is whether The Court should exercise its equitable power to toll the applicable statute of limitations on Plaintiff's behalf.[4]

At the outset, it should be noted that federal courts generally "extend[] equitable relief only sparingly." *See, e.g., Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). More to the point, the Fourth Circuit has clearly stated that equitable tolling should be granted only in the most exceptional of cases. *See, e.g., Chao v. Virginia Dep't of Transp*., 291 F.3d 276,

---

[4] While Plaintiff has not cited any authority from a federal appellate court stating that the requirements of § 2614 may be waived, the Court notes that at least two district courts in this circuit have found the one-year limitations period to be non-jurisdictional and thus waivable. *See, e.g., Mullinax*, 199 F. Supp. 2d at 327-28; *see also Kerby v. Mortgage Funding Corp.*, 992 F. Supp. 787, 793-96 (D. Md. 1998). Accordingly, the Court will assume, *arguendo*, that it may grant Plaintiff the equitable relief that she seeks, provided, of course, that she has shown good cause for doing so.

283 (4th Cir. 2002) ("The circumstances under which equitable tolling has been permitted are . . . quite narrow."). Indeed, it is well established that "[a]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Id*. (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000) (quoting *Alvarez-Machain v. United States*, 107 F.3d 696, 700 (9th Cir. 1996)).

In general, the "litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *See, e.g., Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (citing *Irwin*, 498 U.S. at 96). As the Supreme Court has made clear, a failure to establish either element will result in the denial of the relief sought. *Id*. ("Even if we were to accept petitioner's theory [that he had satisfied the extraordinary circumstance test], he would not be entitled to relief because he has not established the requisite diligence."). In the case at bar, the burden is on Plaintiff Davis to establish both that she acted diligently in pursuing her rights, and that some extraordinary circumstance prevented her from filing her claim in a timely fashion.

Here, the "extraordinary circumstance" which Plaintiff contends prevented her from filing her claims in a timely manner is the alleged fraudulent concealment of certain critical facts by Defendants. (Pl.'s Br. at 22-26.) Generally speaking, Plaintiff is correct in asserting that the fraudulent concealment of key facts by one party from the other can provide a court

with an adequate basis to equitably toll a statute of limitations. *See GO Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170, 177-78 (4th Cir. 2007) ("Fraudulent concealment is an 'equitable doctrine . . . read into every federal statute of limitation.'") (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946)). However, in this particular instance, Plaintiff has not made an adequate showing to meet the test for equitable tolling.

The Fourth Circuit has formalized the doctrine of equitable tolling based on fraudulent concealment into a three-part test. *See, e.g., Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218 (4th Cir. 1987). A claimant must establish that (1) the party pleading the statute of limitations fraudulently concealed facts which are the basis of a claim, (2) the claimant failed to discover those facts within the statutory period, despite (3) the exercise of due diligence. *Id.* It is with this specific framework in mind that the Court must evaluate Plaintiff's request to equitably toll RESPA's statute of limitations.

At the heart of Plaintiff's claims lies the allegation that Defendants "included the cost of financial incentives in the price of the homes [sold] while failing to disclose the same." (Pl.'s Br. at 25.) Indeed, it is this allegation of inflated sales prices (resulting from the purported inclusion of financial incentives), which Plaintiff maintains constitute illegal kickbacks or economic benefits under RESPA, and which forms the basis of her RESPA claims. (*Id*. at 12-15.) Further, Plaintiff argues that, *inter alia*, Defendants fraudulently concealed this alleged "fact" from her through a "myriad of methods." (*Id*. at 24-25.)

-7-

Assuming, *arguendo*, that (1) such factual averments could form an adequate basis to support Plaintiff's RESPA claims, (2) Defendants concealed said facts from Plaintiff, and (3) Plaintiff failed to discover these facts within the statutory period, the Court is nevertheless not persuaded that Plaintiff exercised the "requisite diligence" that both the Supreme Court and the Fourth Circuit require of a plaintiff before allowing a statute of limitations to be tolled. *See, e.g., Pace*, 544 U.S. at 418; *see also Chao*, 291 F.3d at 283 (equitable tolling is not appropriate where due diligence is lacking); *accord Irwin*, 498 U.S. at 96 (courts are quite unforgiving when they receive late filings "where the claimant failed to exercise due diligence in preserving his legal rights.") (citing *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.")).

In point of fact, Plaintiff has not pled *any* facts whatsoever to show that she exercised any diligence at all in determining whether the cost of the incentives she received were actually "priced-in" to the total cost of her home, other than to state as much in a completely terse and conclusory manner. She does not allege that she had (or even considered having) an independent appraisal conducted for her own benefit, or even that she took the most basic step of asking Defendants whether said incentives were actually included in the price of her home – not that such a superficial inquiry would have satisfied her duty to vigilantly protect her own rights. *See, e.g., Pocahontas Supreme Coal*, 828 F.2d at 219 ("'[D]ue diligence' contemplates more than [a mere] unpursued inquiry" by the claimant.).

In addressing arguments similar to those offered by Plaintiff, the Fourth Circuit has specifically rejected the notion that a plaintiff who purchases real property without taking affirmative steps to ascertain its value can invoke the doctrine of equitable tolling based on a seller's purported fraudulent misrepresentation/concealment of said value. *See, e.g., Orsi v. Kirkwood*, 999 F.2d 86, 89-90 (4th Cir. 1993) (denying equitable tolling where claimant "simply did nothing" to timely discover claims). In that case, the plaintiff purchasers maintained that the defendant seller had misrepresented the "worth" of their property to them, thereby tolling the applicable statute of limitations until such time as they learned its "true value" in due course. *Id*. at 89. Among other reasons, the court determined that it should not toll the statute of limitations because the plaintiffs had not shown that they acted diligently in "discover[ing] their cause of action before the limitations period ran." *Id*.

The *Orsi* Court stated that because the plaintiffs did not attempt to determine the value of the lot for themselves, and did not inquire into its legal status, they had not adequately protected their own interests. *Id*. The Fourth Circuit concluded that because the plaintiffs had the option of having the land appraised for their own benefit and/or inquiring further into its legal status, yet nonetheless chose not to, they could not invoke the doctrine of equitable estoppel based on fraudulent concealment. *Id*. As the Fourth Circuit reiterated in *Chao*, such a lack of diligence on the part of a claimant is fatal. 291 F.3d at 283 ("'[R]easonableness' is not the touchstone of equitable tolling.") ("The question is whether the delinquent *plaintiff* has done everything *she* can to preserve her rights.").

The rationale of *Orsi* applies with equal force here to bar Plaintiff's RESPA claims. Indeed, Plaintiff's failure to at least attempt to verify for herself, either before or after closing (or in the several years between the expiration of the statute of limitations and the time of filing the complaint herein), that she negotiated an appropriate price, which did not incorporate the cost of the incentives she received, either through an independent appraisal or some other method, is a critical factor in the Court's decision to deny her request for equitable relief. To be clear, when the Court attempts to answer the question posed by *Chao*, i.e., whether "*plaintiff* has done everything *she* can to preserve her rights," the only answer it can reach is that she did not.[5]

This policy, that a plaintiff must vigilantly protect her own rights before seeking equitable relief from the court is deeply entrenched in our jurisprudence because, as the

---

[5] The Court notes that the record does indicate that an appraisal was conducted at or around the time Plaintiff purchased her home from Defendants; however, as Defendants have stated, and Plaintiff has not contested, this appraisal was done for the benefit of Beazer Mortgage as the lender, not Plaintiff. Plaintiff has not specifically argued that the fact that such an appraisal was conducted has relieved her in any way of her obligation to protect her own rights, let alone cited any authorities to that effect. In any event, the Court concludes that this fact does nothing to change its analysis. Based on its reading of *Orsi*, the Court considers the relevant inquiries to be (1) whether or not Defendants did something to prevent Plaintiff from determining the alleged "true value" of her property on her own, and (2) whether Plaintiff acted diligently in protecting her rights; the issue of whether or not Defendants supported their alleged misrepresentation of value with documentation is hardly crucial, if relevant at all. Indeed, the fact remains that even if the appraisal conducted on behalf of Beazer Mortgage supported the sale price, Plaintiff was still free to inquire further into whether her home was appropriately valued, yet she chose not to. In any event, it is impossible to glean from Plaintiff's pleading the factual "grounds" upon which she bases her claim that she was diligent, which legal conclusion, the Court is, of course, not bound to accept. *See, e.g., Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949-52 (2009) (plaintiff must plead the factual "grounds" which entitle her to relief) (conclusory allegations are not entitled to assumption of truth).

-10-

Supreme Court has stated, "strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Baldwin County*, 466 U.S. at 152 (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980)). Accordingly, the Court finds that Plaintiff's RESPA claims are time-barred and therefore should be dismissed.[6]

---

[6] Plaintiff file this action on April 8, 2008. Throughout her argument, Plaintiff has insisted that her claims should be equitably tolled because all of the facts surrounding Defendants' activities were hidden from the public until the *Charlotte Observer*, a newspaper, published an article on Defendants' alleged practices in March of 2007. Notwithstanding this allegation, Plaintiff posits that her time for filing suit should be tolled until June 27, 2007, the date on which Defendants fired one of their high-ranking officials for reasons which Plaintiff maintains were connected to the facts underlying this suit. Indeed, Plaintiff seems to view the firing of this official as a pivotal moment when Defendants tacitly admitted to the world that something was amiss, thereby re-starting the then-tolled clock on her RESPA claims. This argument evidences a total misunderstanding of the doctrine of equitable tolling based on fraudulent concealment.

As the Fourth Circuit has previously stated, this type of argument "borders on sophistry and falls of its own weight." *See, e.g., Pocahontas Supreme Coal*, 828 F.2d at 218. Indeed, "[t]o permit a claim of fraudulent concealment to rest on no more than an alleged failure to own up to illegal conduct . . . would effectively nullify the statute of limitations." *Id*. at 218-19 ("It can hardly be imagined that illegal activities would ever be so gratuitously revealed."). Thus, Plaintiff's belief that her time for filing her RESPA claims should be measured from the date when Defendants allegedly conceded some sort of wrongdoing is misguided. *Cf. id*. ("'Fraudulent concealment' implies conduct more affirmatively directed at deflecting litigation than that alleged here."); *see also Orsi*, 999 F.2d at 89-90 (defendant must "prevent" plaintiff from timely asserting her rights). Indeed, were Plaintiff entitled to some period of tolling, a more appropriate event to re-start the clock on her claims, in view of her duty to do everything she could to protect her rights, would be the publication of the *Charlotte Observer's* article in March of 2007; however, even in this instance, Plaintiff's claims, which were first filed in April of 2008 would nonetheless be time-barred.

In any event, Plaintiff has not shown that she acted diligently in protecting her rights and/or discovering her putative claims during the relevant filing period, and neither the publication of the *Charlotte Observer's* so-called "expose," nor the firing of Defendants' officer in any way relieves her of that duty. *Accord Brumbaugh v. Princeton Partners*, 985 F.2d 157, 162 (4th Cir. 1993) ("Merely bringing suit after the scheme has been laid bare through the efforts of others . . . will not satisfy the requirements of due diligence . . . ."); *cf. Pocahontas Supreme Coal*, 828 F.2d at 218-19.

-11-

### 2. Plaintiff's UDTPA Claim (Count I)

Plaintiff alleges that Defendants misrepresented the DDP in the marketing and selling of their homes, which, she maintains, constitutes a violation of the UDTPA. (Am. Compl. ¶¶ 116-26.) In support of her claim, she argues that: (1) she paid more than one dollar towards her down payment; and (2) the cost of the incentives she received were "built-in" to the price of her home. (*Id*.) North Carolina law states that unfair and deceptive trade practices claims "shall be barred unless commenced within four years after the cause of action accrues." *See, e.g., Nash v. Motorola Commc'ns & Elecs., Inc.*, 96 N.C. App. 329, 331, 385 S.E.2d 537, 538 (1989) (citing N.C. Gen. Stat. § 75-16.2).

In contradistinction to RESPA's statute of limitations, discussed *supra*, the UDTPA utilizes a "discovery rule," which makes the accrual date of Plaintiff's claims somewhat more of a moving target. *Cf. id*. Indeed, under North Carolina law, claims sounding in fraud, including claims brought under the UDTPA, accrue "at the time the fraud is discovered or *should have been discovered* with the exercise of reasonable diligence." *Id*. Thus, before the Court can determine whether Plaintiff's UDTPA claim was timely filed, it must pinpoint the date on which the claim first accrued.

In this instance, Plaintiff argues that her claims did not accrue until June 27, 2007, the date on which Defendants fired a high-ranking official for conduct allegedly connected to the facts underlying this suit. (Pl.'s Br. at 20.) The Court has already observed, however, that March 2007 appears a more appropriate "discovery date" than June 2007 for application

-12-

of "timeliness" considerations. Defendants respond by arguing that all of the information Plaintiff needed to determine whether she had a cause of action was contained in documents which were in her possession at or before the time she closed on her property, including, *inter alia*, her HUD statement and her purchase agreement, both of which were attached as exhibits to her original complaint. Thus, they conclude that her claims accrued no later than her closing date, in which case her time for filing a UDTPA has long since passed.

The Court cannot determine at the pleading stage of this case, or as a matter of law under Defendants' Rule 12(b)(6) motion, that Plaintiff's UDTPA claim is time-barred. Discovery in this action may shed light on issues related to the appropriate accrual date for Plaintiff's UDTPA claim. Accordingly, the motion to dismiss Plaintiff's UDTPA claim on limitations grounds should be denied at this time, without prejudice to its renewal if facts adduced in discovery form a reasonable basis for assertion of the defense hereafter in this case.

C.     **Rule 8 Pleading Standards Under *Twombly* and *Iqbal***

In 2007, the Supreme Court decided *Bell Atlantic Corp. v. Twombly*, an antitrust case which came before the court on a motion to dismiss pursuant to Rule 12(b)(6). 550 U.S. 544 (2007). In that case, the court examined "the practical significance" of what it called "the Rule 8 entitlement requirement." *Id*. at 557 (discussing Fed. R. Civ. P. 8). *Twombly* held that "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time

-13-

and money by the parties and the court." *Id*. at 558 (internal quotation marks, punctuation and citations omitted); *see also Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005); *Asahi Glass Co. v. Pentech Pharms., Inc.*, 289 F. Supp. 2d 986, 995 (N.D. Ill. 2003) (Posner, J., sitting by designation) ("[S]ome threshold of plausibility must be crossed . . . before a . . . case should be permitted to go into its inevitably costly and protracted discovery phase.") (cited favorably in *Twombly*, 550 U.S. at 558).

In practical terms, the court abrogated the "no set of facts" standard for construing Rule 8, which was set forth in *Conley v. Gibson*, 355 U.S. 41 (1957). *Id*. at 560-63 ("[A]fter puzzling the profession for 50 years, this famous observation has earned its retirement."). In so doing, the court held that a claimant cannot survive a motion to dismiss simply because his "pleadings left open the possibility that [he] might later establish some set of undisclosed facts to support recovery." *Id*. at 561-62 ("[A] wholly conclusory statement of claim" must be dismissed.). As the *Twombly* Court aptly stated, "Mr. Micawber's optimism" is not enough to allow a plaintiff to survive a motion to dismiss. *Id*. at 562. *See also, Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949-52 (2009)(*Twombly* test not limited to antitrust cases buy is a rule of general import, applicable to all civil actions).

Applying this framework to Plaintiff's UDTPA claim, the Court determines that her amended complaint is sufficient to withstand a facial challenge under Rule 12(b)(6). In order to state a proper UDTPA claim, Plaintiff is required to identify specific representations, omissions or deceptive or misleading acts that affected commerce and caused her harm. *See,*

-14-

*e.g., First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 252 (1998). Plaintiff maintains that the "deceptive or misleading" act which Defendants are guilty of is the alleged incorporation of the cost of her financial incentives into the total purchase price she agreed to pay, without as much being disclosed to her. This bedrock allegation is an adequate assertion in this case, and "plausibility" is sufficiently shown under all of the circumstances of this case.

There appears in the record in this action a deferred prosecution agreement ("DPA"), which was recently executed by Beazer Homes and the U.S. Attorney's Office for the Western District of North Carolina. (Docket No. 35, Pl.'s Mem. in Supp. of Mot. for Order Barring Defs. from Disseminating Misleading Notice ("Pl.'s Class Notice Br."), Ex. 1, DPA.) In that document, Beazer Homes "accepts and acknowledges responsibility" for the criminal acts of its own former employees, as well as those of Beazer Mortgage, as set forth in a related criminal information (the "Information"). (*Id*. ¶ 3.) Further, Beazer Homes agreed not to contest or contradict the facts set forth in the Information in any eventual prosecution deferred by the agreement. (*Id*.) Notably, the Information alleges that "on certain occasions," Beazer Homes and Beazer Mortgage "fraudulently increased the prices of homes sold to down-payment assistance beneficiaries in order to offset the cost of the down-payment assistance, thereby fraudulently increasing the loan amount to be repaid by the homebuyer." (Pl.'s Class Notice Br., Ex. 2, Information.) Thus, even though the DPA recites that neither it, nor the Information constitute a final adjudication of the matters

-15-

Case 1:08-cv-00247-WO-PTS   Document 39   Filed 11/17/09   Page 15 of 16

addressed therein, it appears that Beazer Homes has admitted some level of misconduct relating to "certain" of its home sales, as least insofar as federal law is concerned. While neither document speaks to the particulars of Plaintiff's case, or to whether Defendants' conduct is actionable under North Carolina's UDTPA, the Court considers this development a significant factor in assessing the "plausibility" of Plaintiff's UDTPA claim. While the DPA is, of course, not a part of Plaintiff's Amended Complaint (it post-dates the Amended Complaint), Plaintiff did allege within the complaint (¶¶ 43-45) certain events in 2007 that are adequate, in conjunction with the specific allegations related to Plaintiff's transactions with Defendants, to address the plausibility concerns that underlie *Twombly and Iqbal*. A Plaintiff does not have to prove its claim in its complaint, but must only demonstrate that the claim is legally sufficient and is plausible in light of facts alleged. Plaintiff Davis has met this test with regard to her UDTPA claim.

## Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Defendants' motion to dismiss (Docket No. 24) be granted with prejudice as to Counts II and III and denied as to Count I. The Clerk shall set the matter on for an initial pretrial conference.

/s/ P. Trevor Sharp
United States Magistrate Judge

Date: November 17, 2009